# NO. 12-15-00279-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *IN THE INTEREST OF Z. C.,* | § | *APPEAL FROM THE 1ST* |
| *A CHILD* | § | *JUDICIAL DISTRICT COURT* |
|  | § | *SAN AUGUSTINE COUNTY, TEXAS* |

## *MEMORANDUM OPINION AND ABATEMENT ORDER*

C.C. and W.C. appeal the termination of their parental rights. In one and three issues respectively, they challenge the trial court's termination order. We abate this appeal and remand the case to the trial court with instructions.

## BACKGROUND

C.C. and W.C. are the parents of Z.C., born February 2, 2009. On July 25, 2014, the Department of Family and Protective Services (the Department) filed an original petition for protection of Z.C., for conservatorship, and for termination of C.C.'s and W.C.'s parental rights. The Department was appointed temporary managing conservator of the child, and C.C. and W.C. were appointed temporary possessory conservators with limited rights and duties.

At the conclusion of the trial on the merits, the jury found, by clear and convincing evidence, that C.C.'s parental rights should be terminated under subsections (D), (E), (L), (N), and (O) of Texas Family Code Section 161.001(b)(1). The jury also found, by clear and convincing evidence, that W.C.'s parental rights should be terminated under subsections (D), (E), (N), and (O). Thereafter, the trial court found, by clear and convincing evidence, that C.C. and W.C. had engaged in one or more of the acts or omissions necessary to support termination of their parental rights, and that termination of the parent-child relationship between C.C., W.C., and Z.C. is in the child's best interest. Based on these findings, the trial court ordered that the parent-child relationship between Z.C. and her parents be terminated. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

As part of his first issue, W.C. argues that the evidence is legally insufficient to support the jury's finding that his parental rights to Z.C. should be terminated. A no evidence complaint is preserved through one of the following: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992); *see also In re D.J.J.*, 178 S.W.3d 424, 426-27 (Tex. App.—Fort Worth 2005, no pet.). W.C. did not make an objection to the submission of the issue to the jury or file a postverdict motion to preserve his legal sufficiency complaint. Although he filed a motion for new trial, he did not challenge the legal sufficiency of the evidence in the motion. *See In re A.H.J.*, No. 05-15-00501-CV, 2015 WL 5866256, at *10 (Tex. App.—Dallas Oct. 8, 2015, pet. denied) (mem. op.) (finding that mother waived her legal sufficiency complaint because motion for new trial raised only factual sufficiency challenge). Therefore, W.C. has waived his complaint about the legal sufficiency of the evidence to support the jury's findings.

Also as part of his first issue, W.C. contends that the evidence is factually insufficient to support the jury's findings that his parental rights to Z.C. should be terminated. A point in a motion for new trial is a prerequisite to a complaint of factual insufficiency of the evidence to support a jury finding. TEX. R. CIV. P. 324(b)(2); *In re A.J.L.*, 136 S.W.3d 293, 301 (Tex. App.—Fort Worth 2004, no pet); *see also In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003) (applying Texas Rule of Civil Procedure 324(b)(2) requiring motion for new trial to preserve complaint of factual sufficiency to support jury finding in parental termination cases). Although W.C. filed a motion for new trial, he did not raise the issue of factual sufficiency in the motion. Therefore, he has waived his complaint about the factual sufficiency of the evidence to support the jury's findings. Accordingly, we overrule W.C.'s first issue.[1]

## IMPROPER JURY ARGUMENT

In his second issue, W.C. complains that statements made by C.C.'s attorney during his opening statement and closing argument were improper jury arguments. Further, he contends,

---

[1] W.C. makes no claim that failure to preserve error was unjustifiable or the result of ineffective assistance of counsel. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005).

that even though he did not object at the time, these arguments were so plainly prejudicial that an instruction to disregard would probably have been to no avail. In other words, W.C. asserts that C.C.'s attorney's statements were incurable jury argument. Generally, an objection to improper jury argument must be preserved by a timely objection and request for an instruction that the jury disregard the improper remark. TEX. R. APP. P. 33.1(a)(1); *see also Nguyen v. Myers*, 442 S.W.3d 434, 442 (Tex. App.—Dallas 2013, no pet.). However, a point in a motion for new trial is a prerequisite to a complaint of incurable jury argument that is not otherwise ruled on by the trial court. *See* TEX. R. CIV. P. 324(b)(5); *Nguyen*, 442 S.W.3d at 442; *Clark v. Bres*, 217 S.W.3d 501, 509 n.1 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Here, W.C. admits that he did not timely object to the attorney's statements and arguments. Further, he did not raise the issue of incurable jury argument in his motion for new trial. *See* TEX. R. CIV. P. 324(b)(5); *Nguyen*, 442 S.W.3d at 442; *Clark*, 217 S.W.3d at 509 n.1. Therefore, he has waived his complaint about C.C.'s attorney's allegedly incurable jury arguments. Accordingly, we overrule W.C.'s second issue.[2]

### FATHER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, W.C. argues that his trial counsel "unreasonably" failed to conduct an inquiry outside the presence of the venire panel after a prospective juror commented on her knowledge of W.C. and Z.C. According to the record, the prospective juror stated that she knew W.C., his girlfriend, and Z.C., was Z.C.'s teacher at a day care, and "found [W.C.] obnoxious." His trial counsel, W.C. asserts, should have moved to disqualify the venire panel and his failure to do so resulted in a trial tainted by the negative opinion and remarks of the prospective juror. Thus, he contends, he was deprived of his right to a fair trial by an impartial jury. We construe W.C.'s argument to be that he received ineffective assistance of counsel from his retained attorney.

"In Texas, there is a statutory right to counsel for indigent persons in parental-rights termination cases." *In re M.S.*, 115 S.W.3d at 544; *see* TEX. FAM. CODE ANN. § 107.013(a)(1) (West Supp. 2014). The Supreme Court of Texas has held this statutory right to appointed counsel necessarily "embodies the right to effective counsel." *In re B.G.*, 317 S.W.3d 250, 253-

---

[2] Because W.C. has waived his complaint, we express no opinion about whether he could have complained about the jury arguments of C.C.'s attorney.

54 (Tex. 2010) (quoting **In re M.S.**, 115 S.W.3d at 544). Thus, a parent may challenge an order of termination on the ground that court-appointed counsel rendered ineffective assistance. **In re M.S.**, 115 S.W.3d at 544-45 (applying **Strickland** standard to parental termination cases); **In re J.O.A.**, 283 S.W.3d 336, 341 (Tex. 2009). However, W.C.'s trial counsel was retained.

In August 2014, W.C. filed an affidavit of indigence and the trial court subsequently granted him a court-appointed attorney. W.C.'s court-appointed attorney filed an original answer on his behalf in August 2014. The record shows that another attorney filed an appearance of counsel on W.C.'s behalf in July 2015, and represented him at trial. The second trial counsel told the court at the beginning of trial that W.C. had retained him.

A parent who hires his own attorney in lieu of the attorney appointed by the court cannot raise an ineffective assistance of counsel challenge to the parental termination order. *See* **In re V.G.**, No. 04-08-00522-CV, 2009 WL 2767040, at *12 (Tex. App.—San Antonio Aug. 31, 2009, no pet.) (mem. op.) (citing **Martin v. Martin**, No. 04-04-00828-CV, 2005 WL 1552763, at *1 (Tex. App.—San Antonio July 6, 2005, no pet.) (mem. op.) (holding "no claim for ineffective assistance of counsel lies in a civil case where counsel is retained")); **In re J.B.**, No. 07-14-00187-CV, 2014 WL 5799616, at *5 (Tex. App.—Amarillo Nov. 6, 2014, no pet.) (mem. op.) (citing **In re V.G.**, 2009 WL 2767040, at *12). Consequently, we hold that W.C. cannot challenge the termination order based on a claim that his retained counsel rendered ineffective assistance. We overrule W.C.'s third issue.

**MOTHER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL**

In her sole issue on appeal, C.C. argues that her trial counsel rendered ineffective assistance of counsel. She also contends that her trial counsel's performance was so deficient that it was tantamount to having no counsel at all, triggering a presumption that it changed the outcome of the case.

**Standard of Review**

An indigent parent is entitled to appointed counsel in a termination of parental rights case, and that statutory right "embodies the right to effective counsel." **In re B.G.**, 317 S.W.3d 253-54. Ineffective assistance claims must be firmly founded in the record, and the record must affirmatively show the alleged ineffectiveness. **In re L.C.W.**, 411 S.W.3d 116, 127 (Tex. App.—El Paso 2013, no pet.); *see also* **Walker v. Tex. Dep't of Family & Protective Servs.**, 312 S.W.3d

4

608, 622-23 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). When the record is silent concerning the reasons for counsel's actions, the reviewing court will not engage in speculation to find ineffective assistance of counsel, and the appellant bears the burden of overcoming the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy. *In re L.C.W.*, 411 S.W.3d at 127.

In reviewing claims of ineffective assistance of counsel, we consider all circumstances surrounding the case and apply the Supreme Court's two pronged test used in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). *In re M.S.*, 115 S.W.3d at 545. Under *Strickland's* first prong, the parent must show that counsel's performance was deficient. *See id.* (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *In re J.O.A.*, 283 S.W.3d at 342. Under the second prong, the parent must show that the deficient performance prejudiced the defense. *See In re M.S.*, 115 S.W.3d at 545. This requires a showing that counsel's errors were so serious as to deprive the parent of a fair trial, a trial whose result is reliable. *See In re J.O.A.*, 283 S.W.3d at 342. To establish prejudice, the parent must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *In re V.V.*, 349 S.W.3d 548, 559 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In conducting our review, we "must primarily focus on whether counsel performed in a reasonably effective manner." *In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006). We give great deference to counsel's performance, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic." *Id.* Challenged conduct constitutes ineffective assistance only when it is "so outrageous that no competent attorney would have engaged in it." *Id.* To be successful in her ineffective assistance of counsel claim, C.C. must show that counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064; *see also In re L.D.G.*, No. 12-11-00005-CV, 2012 WL 171888, at *1 (Tex. App.—Tyler Jan. 18, 2012, no pet.) (mem. op.). Failure to satisfy *Strickland's* requirements defeats an ineffectiveness challenge. *See Walker*, 312 S.W.3d at 623.

5

**Analysis**

In her brief, C.C. argues that her trial counsel failed to (1) provide any Wyoming child protective services records, criminal records, community supervision records, or testimony from any source to show that she had been rehabilitated, (2) provide any of her psychological or counseling records, or (3) provide a defense to subsections (D) and (O) of Texas Family Code Section 161.001(b)(1). Thus, she contends, she was constructively denied counsel because trial counsel entirely failed to subject the Department's case to meaningful adversarial testing. *See United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

In *Cronic*, the Court identified three situations implicating the right to counsel that involved circumstances so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. *Bell v. Cone*, 535 U.S 685, 695, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting *Cronic*, 466 U.S. at 658–59, 104 S. Ct. at 2046-47). These three situations occur when (1) the accused is denied the presence of counsel at a critical stage of her trial, (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, or (3) circumstances at trial are such that, although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. *Cronic*, 466 U.S. at 659–60, 104 S. Ct. at 2047.

C.C. contends that *Cronic* applies because her trial counsel did not address the risk to Z.C. by providing child protective services records, criminal records, community supervision records, testimony, or any psychological or counseling records showing that she had been rehabilitated and posed no risk to Z.C. She also argues that her trial counsel failed to subject the Department's case regarding subsections (D) and (O) of Texas Family Code Section 161.001(b)(1) to meaningful adversarial testing. Thus, she appears to argue that she does not need to prove prejudice. However, the differences in the *Strickland* and *Cronic* standards are not of degree, but of kind. *Bell*, 535 U.S. at 697, 122 S. Ct. at 1851. In other words, the standards distinguish between shoddy representation and no defense at all. *Childress v. Johnson*, 103 F.3d 1221, 1229 (5th Cir. 1997). "[B]ad lawyering, regardless of *how* bad, does not support" applying the *Cronic* standard. *See McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir.1990). Accordingly, prejudice will be presumed only when the accused can establish that counsel was not merely incompetent but inert. *Childress*, 103 F.3d at 1228. Here, C.C. does not

complain that she was denied counsel at a critical stage of her trial or that her trial counsel was inert. Because C.C. complains of her trial counsel's alleged errors, omissions, or strategic decisions in her defense, i.e., incompetence, we decline to apply the **Cronic** standard to this case.

Moreover, it is C.C.'s burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *See* **Strickland**, 466 U.S. at 689, 104 S. Ct. at 2065; **Tong v. State**, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See* **Thompson v. State**, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). But C.C. did not file a motion for new trial and call her trial counsel as a witness to explain his reasoning for failing to provide certain records, testimony, or defenses. *See* **Bone v. State**, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002) (stating that defense counsel should be given opportunity to explain actions before being condemned as unprofessional and incompetent); *see also* **Anderson v. State**, 193 S.W.3d 34, 39 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd) (holding that because appellant did not call his trial counsel during motion for new trial hearing to give reasons for failure to investigate or present mitigating evidence, record does not support ineffective assistance claim). When, as here, the record fails to show why counsel did not provide certain records, testimony, or defenses, we cannot conclude that counsel's performance was deficient. *See* **Jackson v. State**, 877 S.W.2d 768, 771-72 (Tex. Crim. App. 1994). Because the record does not show deficient performance, we conclude that C.C. has failed to meet the first prong of the **Strickland** test. *See* **id.**

C.C. also has failed to show that, but for counsel's allegedly unprofessional errors, the result of the proceeding would have been different. *See* **Strickland**, 466 U.S. at 694, 104 S. Ct. at 2068; **Tong**, 25 S.W.3d at 712. C.C. does not explain in her brief how her trial counsel's alleged failures caused her harm. Instead, she requests that this court abate her appeal and order the trial court to conduct a hearing to determine whether trial counsel's actions or failures to present a defense are meritorious. We decline to do so. *See* **In re V.V.**. 349 S.W.3d at 569-70 (Keyes, J., concurring in part, and dissenting in part).

Because C.C. failed to show that the result of the proceeding would have been different if her trial counsel had provided certain records, testimony, or defenses, she has failed to meet the second prong of the **Strickland** test. *See* **Strickland**, 466 U.S. at 694, 104 S. Ct. at 2068; **Tong**,

7

25 S.W.3d at 712. Therefore, even if she had met the first prong of *Strickland*, she still could not prevail.

We overrule C.C.'s sole issue on appeal.

## INDIAN CHILD WELFARE ACT

In our review of the record, we observed that in an adversary hearing report from CASA to the court dated August 4, 2014, there was a statement that W.C. "refused to do the hair follicle" test because he was "part Indian and [was not] allowed to cut his hair." In a permanency plan and progress report from the Department to the trial court dated January 5, 2015, the "box" indicating the child's Native American status was checked. The report explained the "Child's possible American Indian child status reported by [W.C.], father, and is yet to be determined." The permanency plan and progress reports to the trial court dated May 1, 2015, and September 1, 2015, repeated the language quoted above. The record does not show that the child's Native American status was determined prior to trial, and the order of termination makes no reference to the issue.

Congress passed the Indian Child Welfare Act (ICWA) in response to the "rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S. Ct. 1597, 1599-1600, 104 L. Ed. 2d 29 (1989); *see also In re W.D.H.*, 43 S.W.3d 30, 34 (Tex. App–Houston [14th Dist.] 2001, pet. denied). The ICWA applies to all state child custody proceedings involving an Indian child when the court knows or has reason to know an Indian child is involved. 25 U.S.C.A. § 1912(a) (West, Lexis current through PL 114-143, approved Apr. 11, 2016); *In re R.R., Jr.*, 294 S.W.3d 213, 217 (Tex. App.–Fort Worth 2009, no pet.). "Child custody proceeding" means, and includes, foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. 25 U.S.C.A. § 1903(1) (West, Lexis current through PL114-143, approved Apr. 11, 2016). An Indian child is defined by the ICWA as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C.A. § 1903(4) (West, Lexis current through PL 114-143, approved Apr. 11,

2016). The ICWA, however, does not define what constitutes being a "member" or "being eligible for membership." *See* 25 U.S.C.A. § 1903(4). Each tribe has its own criteria for determining tribe membership. *See In re R.R.*, 294 S.W.3d at 217-18.

The Bureau of Indian Affairs created guidelines for state courts to use in Indian child custody proceedings to assist with the interpretation of the ICWA. *See* BUREAU OF INDIAN AFFAIRS GUIDELINES FOR STATE COURTS; INDIAN CHILD CUSTODY PROCEEDINGS (BIA GUIDELINES), 44 FED. REG. 67,584 (Nov. 26, 1979). The Guidelines state that "[p]roceedings in state courts involving the custody of Indian children shall follow strict procedures and meet stringent requirements to justify any result in an individual case contrary to these preferences." BIA GUIDELINES, 44 FED. REG. at 67,586. Specific instructions are provided in the Guidelines for the determination of the status of an alleged Indian child. *See In re J.J.C.*, 302 S.W.3d 896, 900 (Tex. App.–Waco 2009, no pet.). The burden is placed on the trial court to seek verification of the child's status through either the Bureau of Indian Affairs or the child's tribe. BIA GUIDELINES, 44 FED. REG. at 67,586 (stating that "the court shall seek verification of the child's status"). Further, the Guidelines provide that "[c]ircumstances under which a state court has reason to believe a child involved in a child custody proceeding is an Indian include [when] . . . (i) Any party to the case . . . informs the court that the child is an Indian child. . . . (ii) Any public or state-licensed agency involved in child protection services or family support has discovered information which suggests that the child is an Indian child." *Id.*

Under the ICWA, an Indian tribe is entitled to notice of a custody proceeding involving an Indian child. *See* 25 U.S.C.A. § 1912(a). It is the duty of the trial court and the Department to send notice in any involuntary proceeding "where the court knows or has reason to know that an Indian child is involved." 25 C.F.R. § 23.11 (Lexis current through Apr. 25, 2016 issue). Section 23.11 also requires that the notice be sent to the "appropriate Regional Director" and the Secretary of the Interior. *Id.* § 23.11(a), (b), (f). Upon receiving the notice, the Secretary of the Interior or his designee is obliged to make reasonable documented efforts to locate and notify the tribe and the child's Indian parent or custodians within fifteen days or to notify the trial court how much time is needed to complete the search for the child's tribe. *Id.* § 23.11(f).

A violation of the ICWA notice provisions may be cause for invalidation of the termination proceedings at some later, distant point in time. *See* 25 U.S.C.A. § 1914 (West, Lexis current through PL 114-143, approved Apr. 11, 2016) (providing that "[a]ny Indian child

who is the subject of any action for . . . termination of parental rights under State law, any parent . . . from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections [1911, 1912, and 1913] of this act"); *see also **In re W.D.H.***, 43 S.W.3d at 38-39 (recognizing parent of Indian child has standing to challenge adequacy of notice even though tribe declined to join suit). Consequently, because the termination proceeding here may ultimately result in the adoption of Z.C., strict compliance with the notice provisions of the ICWA and the regulations implementing it in the Code of Federal Regulations is especially important, or "the State could offer prospective adoptive parents no assurance this termination and a subsequent adoption could not be invalidated." *See **In re J.W.***, 498 N.W.2d 417, 419-22 (Iowa Ct. App.1993) (*disapproved on other grounds by **In re N.N.E.***, 752 N.E.2d 1 (Iowa 2008)) (recognizing that notice provisions of the ICWA are to be strictly construed and reversing order terminating parental rights because of inadequate notice and remanding for new hearing after proper notice).

As noted above, a statement in an adversary hearing report from CASA noted that W.C. "refused to do the hair follicle" test because he was "part Indian and [was not] allowed to cut his hair." Moreover, three permanency plan and progress reports indicated that Z.C.'s father reported that the child was of possible "American Indian status." This was information discovered by a state licensed agency involved in child protection services that suggested Z.C. may be an Indian child, and it was sufficient to trigger the ICWA's requirements for notification and determination of Indian status. *See **In re J.J.C.***, 302 S.W.3d at 901 (holding that the trial court had reason to believe that the children were Indian because DFPS discovered that their maternal grandmother was alleged to be a member of the Chippewa Indian Nation); ***In re R.R.***, 294 S.W.3d at 222 (holding that the trial court had reason to believe the children were Indian when mother testified that her grandmother was a registered member of the Kiowa Indian Nation). Therefore, the trial court was obligated to notify the Indian tribe or tribes for an inquiry into the child's Indian status. *See **In re R.R.***, 294 S.W.3d at 219 (noting that the Guidelines' listed circumstances "shall trigger an inquiry by the court and petitioners"). The notice provisions of the ICWA are mandatory. *See* BIA GUIDELINES, 44 FED. REG. at 67,586 (providing that when a state court has reason to believe a child involved in a child custody proceeding is an

Indian, the court shall seek verification of the child's status from either the BIA or the child's tribe).

## CONCLUSION

Because the inquiry required by ICWA is necessary here, we *abate* this appeal and *remand* the case to the trial court. Proper notice that complies with ICWA's notice requisites shall be provided, and then the trial court shall conduct a hearing to determine whether Z.C. is an Indian child under the ICWA. *See* TEX. R. APP. P. 44.4 (providing that appellate court shall not reverse or affirm judgment if trial court can correct erroneous failure to act, and authorizing appellate court to direct trial court to correct erroneous failure to act and to then proceed as if erroneous failure to act had not occurred). The trial court shall cause a record of the proceedings to be prepared and make appropriate findings as to whether Z.C. is an Indian child. The trial court also shall cause a supplemental clerk's record (including any orders and findings resulting from the ICWA hearing) to be filed with the clerk of this court. After we receive the supplemental clerk's record, this appeal will be reinstated.

If, after proper notice and hearing, the trial court has determined that Z.C. is not an Indian child, we will issue a judgment affirming the trial court's termination judgment regarding C.C. and W.C. *See* TEX. R. APP. P. 43.2(a). If, after notice and hearing, the trial court determines that Z.C. is an Indian child, we will issue a judgment reversing the trial court's termination judgment, and remanding the cause to the trial court for a new trial for C.C. and W.C. applying the ICWA. *See* TEX. R. APP. P. 43.2(d); ***R.R., Jr.***, 294 S.W.3d at 238.

<u>GREG NEELEY</u>
Justice

Opinion delivered April 29, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# ABATEMENT ORDER

**APRIL 29, 2016**

**NO. 12-15-00279-CV**

**IN THE INTEREST OF Z. C., A CHILD**

Appeal from the 1st District Court

of San Augustine County, Texas (Tr.Ct.No. CV-14-9548)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in the trial court below, it is ORDERED, ADJUDGED and DECREED by this court that this appeal be **abated** and the cause **remanded** to the trial court with instructions to give proper notification pursuant to the ICWA and determine Z.C.'s status as defined by ICWA and for further proceedings in accordance with this opinion; and that this decision be certified to the court below for observance.

It is THEREFORE ORDERED that the appeal be **abated** and administratively removed from this court's docket until the supplemental clerk's record containing the trial court's order and findings is filed with the clerk of this court.

Greg Neeley, Justice.

*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*