AFFIRM; Opinion issued February 14, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-01510-CV

### TRACY K. NGUYEN, Appellant

### V.

### RODOLFO J. MYERS, Appellee

On Appeal from the 14th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-10-09853

## OPINION

Before Justices FitzGerald, Fillmore, and Evans
Opinion By Justice Fillmore

Rodolfo J. Myers sued Tracy K. Nguyen, alleging Nguyen's negligence was the cause of an automobile accident in which Myers was injured. Following a jury trial, the trial court rendered judgment for Myers in the amount of $42,183.28. On appeal, Nguyen complains Myers's counsel made incurable jury argument that led to, or caused the rendition of, an improper jury verdict. We affirm the trial court's judgment.

### Background

On October 7, 2009, Myers's car was struck from behind by Nguyen's car. Both parties left the scene of the accident without receiving medical treatment. Nguyen began treatment with a chiropractor a few days after the accident and received treatment for approximately six weeks.

Myers first sought chiropractic treatment on October 19, 2009 and remained in treatment for approximately twelve weeks. He also received treatment at the Medical Center of Plano emergency room, from a family physician, and from an orthopedic surgeon. In total, Myers sought to recover $34,183.28 in medical expenses.

Prior to trial, both parties filed motions in limine. As relevant to this appeal, Nguyen sought to preclude Myers from mentioning that Nguyen was covered by liability insurance. Myers agreed to this request, and the trial court granted the request as agreed. In opening statement, Myers's counsel, without objection, stated one of the issues raised during voir dire was:

> who would you trust more, a doctor that has laid hands on you or a doctor that is paid to write up a report. And Dr. Timberlake is their doctor that they paid to come down here and basically write a report and say, Well, yeah, he was injured but he got too much treatment.[1]

During her testimony, Nguyen admitted the accident was her fault.

The only issues before the jury were the recoverability and amount of Myers's damages for past medical expenses, past pain and suffering, and past physical impairment. The trial court admitted into evidence affidavits from each of Myers's health care providers detailing his treatment and the costs for the treatment. Each affidavit stated the treatment Myers received was reasonable and necessary.

Myers testified he hurt his lower back in an accident two years prior to the accident with Nguyen, but was pain-free prior to the accident. After the collision with Nguyen, Myers felt a burning sensation in his lower back. A few days later, the burning sensation changed to a sharp pain. He also started having pain in his neck and his mid-back and began experiencing dizziness. On October 19, 2009, Myers began treatment at All Injury Rehabilitation Garland, a chiropractic clinic.

---

[1] The parties agreed that voir dire would not be recorded.

Dr. Brian Starry, one of Myers's chiropractors, testified that Myers initially complained of pain in his neck and lower back. Myers indicated he was having spasms, aches, stiffness, pain, and ringing in both ears following a car accident. Myers stated his pain was a four or five on a scale of ten and was diminishing. Myers was treated with therapeutic exercise, chiropractic adjustments, and trigger point therapy. Myers was treated daily for approximately two weeks and then approximately three times per week for the next ten weeks. In total, Myers received thirty-one treatments between October 19, 2009 and January 4, 2010 from Starry or another chiropractor in the clinic. He also underwent a physical performance evaluation on January 7, 2010 prior to being released from treatment.

On October 26, 2009, Myers went to the emergency room at the Medical Center of Plano complaining he had been dizzy and suffered slurred speech. By the time Myers was seen in the emergency room, he no longer had these symptoms. Myers also told the emergency room nurse that he had no pain. According to Myers, based on his symptoms, he was afraid there was something wrong with his brain. A computer tomography (CT) scan performed in the hospital revealed no underlying cause for Myers's symptoms. The hospital referred Myers to a neurologist for an evaluation, but Myers did not see the neurologist.

After Starry received the results of the CT scan performed at the emergency room, he ordered a magnetic resonance imaging (MRI) test that was conducted on October 29, 2009. The MRI showed a two to three millimeter disc bulge in Myers's neck. According to Starry, this disc bulge was not apparent on the CT scan. Starry testified the forces on the body during a car accident can cause tears, bulges, herniations, or sequestrations in ligaments and discs. Without surgery, a disc bulge or herniation cannot be completely resolved. The MRI did not show any degeneration in the disc bulge, leading Starry to conclude it was a recent injury. In Starry's opinion, within reasonable

medical probability, the disc bulge is related to the accident with Nguyen.

Due to the disc bulge, Starry referred Myers to Dr. Arif Kahn, a pain management specialist, Dr. Jeffrey Komenda, a family physician, and Dr. Shawn Hayden, an orthopedic surgeon. According to Myers, he did not see Kahn because he received the same treatment from Komenda that he would have received from Kahn. Although Myers initially did not want to see Hayden, he agreed that after the chiropractor "got on to [him] a time or two," he made an appointment with Hayden. Due to Hayden's schedule, Myers was unable to see him until January 2010. Hayden ordered another MRI and then prescribed steroids. Since taking the steroids, Myers has been pain free.

Myers's counsel asked Starry if he knew who Dr. Bill Timberlake was. Starry responded, "yes." Myers's counsel then asked, "What do you know about him?" Starry responded, "I know he is hired by insurance companies and —." Nguyen's counsel stated, "objection" and asked to approach the bench. The trial court denied the request and overruled the objection.[2] Starry then testified:

> He's hired by insurance companies to make judgment on patients that he's never seen before and – I'd like to know what he gets paid. He basically is paid just to say everything's unnecessary and unwarranted.

Starry also indicated that he has seen Timberlake's reports and "it's like he copies and pastes."

Timberlake testified that he was hired by Nguyen's attorney to review Myers's medical records and information about the accident. He was requested to create a report of his findings, but was not asked to reach a particular conclusion. Essentially all of Timberlake's income at the time of trial was from reviewing records for defendants in lawsuits.

Timberlake believes Myers was injured in the accident with Nguyen. However, in

---

[2] At the beginning of the second day of testimony, Nguyen also moved for a mistrial on the ground that Starry's testimony improperly interjected insurance into the case. The trial court denied the motion.

-4-

Timberlake's opinion, Myers had subjective complaints and there were no objective findings related to trauma from the accident. In Timberlake's opinion, the causal relationship between the disc bulge in Myers's neck and the accident was in question. Further, even though a bulge in a disc in the neck is not a minor injury, seventy-six percent of people have a disc bulge without being aware of it.

According to Timberlake, the Chiropractic Guidelines for Quality Assurance and Practice Parameters indicate that, if a patient does not respond to treatment within two weeks, it is reasonable and necessary for the chiropractor to change the treatment and continue with the new treatment for an additional two weeks. If the patient does not respond faster than the normal history of recovery without treatment, the chiropractor should then discontinue treatment and refer the patient to another health care provider. In Timberlake's opinion, all treatment Myers received after November 18, 2009 was unreasonable and unnecessary and he was "doctor hopping."

Timberlake also believed an MRI should not be performed three days after a CT scan, and the MRI performed on October 29, 2009 was unnecessary. However, according to Timberlake, an MRI following a CT scan could be appropriate for unexplained symptoms, including chronic dizziness from a trauma. Timberlake initially testified the MRI showed degeneration of the disc bulge in Myers's neck but, after reviewing the medical records, stated the degeneration related to an injury to Myers's lower back. Timberlake conceded the MRI did not show any degeneration in the disc bulge, but believed a different test was necessary to determine the age of the disc bulge.

Timberlake was critical of the treatment received by Myers at the All Injury Rehabilitation Garland clinic and the amount of the charges for the treatment. According to Timberlake, the fees charged by the clinic in this case were the largest chiropractic charges he has ever seen.

Myers's counsel's closing argument centered on Myers having a bulge in a disc in his neck for the rest of his life. He attacked Timberlake's credibility on the question of whether the disc bulge

-5-

was caused by the accident and asserted the most important part of the trial was when Timberlake, who was "paid by them," tried to "skirt over the fact" and say there was degeneration in the disc bulge in the neck "where there wasn't one." Myers's counsel argued:

> They can't have it both ways. They can't put up this – their hired gun, Dr. Timberlake, up there and say he's exaggerating or "doctor hopping" and then on the other hand say, Well, you're irresponsible because you didn't go to all the doctors that they told you to go to. Or that your injuries, your bulges really aren't that painful because you say they are only a 4 of a 5.
>
> They can't have it both ways and get away with it.

Myers's counsel continued by stating Nguyen was attempting to put the doctors on trial and to "plant a seed" in the jurors' heads about whether to award all the requested medical expenses. However, Myers owed the doctors $34,000, and Myers, not the doctors, would be affected by the failure to award Myers an amount equal to all past medical expenses. He asserted that, although Timberlake had disputed the necessity for some of the treatments, all the doctors who treated Myers filed affidavits stating the treatments were reasonable and necessary.

Nguyen's attorney responded that the justice system does not require a party at fault to pay whatever the other side demanded and there is no credible evidence to support the award of all the requested medical expenses. She asserted Myers had not been consistent in his statements throughout treatment about the level of pain he was experiencing or his other symptoms. She then argued Starry became angry when questioned about his own records, had not treated Myers during the majority of the chiropractic visits, and did not trust his own patient. Nguyen's counsel argued Nguyen should not be required to pay for either an emergency room visit during which Myers had no symptoms or an MRI performed shortly after a CT scan.

As to Timberlake's credibility, Nguyen's counsel argued that she hired him and that he was being compensated for his time, not his opinion. Timberlake provided a specific date after which

–6–

treatment continued even though Myers's condition did not change. According to Nguyen's counsel, any treatments after that date were not Nguyen's responsibility.

The jury awarded Myers $34,183.28 for past medical expenses, which was the entire amount requested by Myers, as well as $8,000 for past pain and suffering. Nguyen filed a motion for new trial asserting the trial court erred by denying the motion for mistrial because the interjection of insurance in the case by Starry violated the motion in limine. Although the trial court's docket sheet indicates the motion for new trial was denied, there is no written order in the record.

## Analysis

In two issues, Nguyen asserts Myers's attorney made incurable jury argument which led to or caused the rendition of an improper verdict. Nguyen argues the "fundamental issue on appeal is whether Myers's premeditated interjection of insurance and unjustified assault of the integrity of Nguyen's expert witness—coupled with jury argument which seeks to further benefit from such improper 'evidence'—requires a new trial." Although Nguyen defines the only issue to be whether Myers's counsel made incurable jury argument, she incorporates into her argument complaints about the trial court's overruling of her objection to Starry's testimony. Although we do not condone Nguyen's failure to clearly set forth all issues she wished to raise in this appeal, we will address Nguyen's evidentiary complaints to the extent we can discern a distinct complaint in her brief.

### Evidentiary Issues

We review a trial court's evidentiary rulings for abuse of discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). A trial court abuses its discretion when it acts without regard for guiding rules or principals. *Id.* However, even if the trial court abuses its discretion by admitting certain evidence, reversal is required only if the error probably resulted in the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1); *U-Haul Int'l, Inc.*, 380 S.W.3d at 136. To

establish harmful error, the complaining party must demonstrate the judgment turns on the particular evidence admitted. *Nissan Motor Co., Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

In determining whether the error was harmful, "we must evaluate the entire case from voir dire to closing argument, considering the evidence as a whole, the strength or weakness of the case, and the verdict." *U-Haul Int'l, Inc.*, 380 S.W.3d at 136. Whether the erroneous admission of evidence is harmful "is more a matter of judgment than precise measurement." *Nissan Motor Co., Ltd.*, 145 S.W.3d at 144. In making that judgment, appellate courts look to the role the evidence played in the context of the trial and the efforts made by counsel to emphasize the erroneous evidence, as well as whether there was contrary evidence that the improperly admitted evidence was calculated to overcome. *U-Haul Int'l, Inc.*, 380 S.W.3d at 136.

## A. Interjection of Insurance

Nguyen first contends the trial court erred by overruling her objection to Starry's testimony that Timberlake is "hired by insurance companies" because rule of evidence 411 prohibits the admission of evidence of liability insurance.[3] Rule 411 provides:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another issue, such as proof of agency, ownership, or control, if disputed, or bias or prejudice of a witness.

TEX. R. EVID. 411. However, "the mere mention of insurance is not necessarily grounds for reversal." *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 708 (Tex. 1989) (op. on reh'g); *see also St. Louis S.W. Ry. Co. v. Gregory*, 387 S.W.2d 27, 33 (Tex. 1965). Rather, the party complaining

---

[3] Outside the presence of the jury, Nguyen's counsel again raised the issue after Starry's direct examination, stating "the doctor has injected insurance into the trial." The trial court stated, "Well, I understand your objection, I overrule that objection. I overruled that at the time you made it." Because the trial court clearly understood the basis of Nguyen's general objection, we conclude this issue has been preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A).

of the ruling must show the evidence of insurance was harmful. *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex. 1962).

We conclude that, even if the trial court erred by overruling Nguyen's objection, any error was harmless. We first note the parties agreed the voir dire would not be recorded, impeding our effort to review the record as a whole. However, the available record demonstrates it was undisputed Nguyen caused the accident, Myers was injured in the accident, and some of the treatment received by Myers was reasonable and necessary. The disputed issues were the extent of Myers's injuries and whether all the treatment he received was reasonable and necessary.

Myers's counsel stated during his opening statement that "they paid" Timberlake to testify Myers received too much treatment. Myers and Starry then testified at length about Myers's symptoms and pain. Starry testified the chiropractic treatment Myers received was reasonable and necessary. As to his other treatment, Myers indicated he sought treatment at the emergency room because his symptoms frightened him. A CT scan at the hospital did not reveal a cause for his symptoms. An MRI performed three days later indicated Myers had a disc bulge in his neck. In Timberlake's opinion, it was not established that the disc bulge was caused by the accident. However, Starry testified there was no degeneration in the disc bulge, it was a recent injury, and, within reasonable medical probability, it was related to the accident with Nguyen. According to Starry, the disc bulge in Myers's neck was a basis for referring Myers to doctors specializing in pain management and orthopedic surgery.

Starry testified he had a negative opinion of Timberlake, and Timberlake testified about his negative opinion of the clinic where Starry worked. Timberlake also testified he was hired by Nguyen's counsel to review Myers's records and give his opinion on whether the treatment was reasonable and necessary. Counsels' arguments centered on whether the disc bulge in Myers's neck

–9–

was related to the accident and whether the treatment he received was necessary. Although both counsel referred in argument to the fact Timberlake was paid for his work on the case, neither counsel mentioned insurance or insurance companies.

Based on this record, we cannot conclude the jury's verdict turned on Starry's isolated mention of insurance companies. We, therefore, conclude any error by the trial court in overruling Nguyen's objection was harmless.

## B.    Improper Statement by Witness

Nguyen also argues that Starry's testimony was an "unfounded, preemptive, and improper attack" on Timberlake and constituted incurable harm. In the trial court, Nguyen did not object to Starry's testimony on this basis, did not request the jury be instructed to disregard the testimony, and did not raise this argument in her motion for new trial. She, therefore, has failed to preserve this complaint for our review. *See* TEX. R. APP. P. 33.1(a)(1); *Ortegon v. Benavides*, No. 04-05-00768-CV, 2008 WL 577175, at *10 (Tex. App.—San Antonio Mar. 5, 2008, pet. denied) (mem. op.) (counsel's statement during testimony that expert witness should be advised of his rights not preserved for appellate review); *Lalusin v. Subnani*, No. 13-04-00582-CV, 2007 WL 1706258, at *1 (Tex. App.—Corpus Christi June 14, 2007, no pet.) (mem. op.) (appellant failed to preserve complaint about witness's statement he had been threatened by failing to object or clearly raise issue in motion for new trial).

Even if Nguyen had preserved this complaint, we conclude it lacks merit. We evaluate whether an improper statement by a witness constitutes incurable harm under the same standards that are applicable to incurable jury argument. *Taber v. Roush*, 316 S.W.3d 139, 161–62 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (op. on reh'g). Incurable statements are rare and generally encompass "arguments that strike at the courts' impartiality, equality, and fairness"

–10–

because they "inflict damage beyond the parties and the individual case under consideration if not corrected." *See Living Ctrs. of Tex., Inc. v. Penlaver*, 256 S.W.3d 678, 681 (Tex. 2008) (per curiam). Instances of incurable statements include (1) appeals to racial prejudice, (2) unsupported, extreme, and personal attacks on opposing parties and witnesses, and (3) "accusing the opposing party of manipulating a witness, without evidence of witness tampering . . . ." *Taber*, 316 S.W.3d at 162 (citing *Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 681; *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 840 (Tex. 1979); and *Tex. Emp'rs Ins. Ass'n v. Haywood*, 153 Tex. 242, 245, 266 S.W.2d 856, 858 (1954)); *see also PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 721 (Tex. App.—Dallas 2011, pet. denied).

To prevail on an incurable statement complaint, the complaining party on appeal generally must show the statement by its nature, degree, and extent constituted such error that an instruction for the court or retraction of the statement could not remove its effects. *See Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 680–81. This requires a showing based on the entire record that the probability the improper statement caused harm is greater than the probability the verdict was grounded on the proper proceedings and evidence. *See Reese*, 584 S.W.2d at 840.

Starry's statement does not rise to the level of harmful error warranting a new trial. Although the statement was arguably improper, it is not one of those "rare" statements that is so inflammatory as to be "incurable." *See Cottman Transmission Sys., L.L.C. v. FVLR Enters., L.L.C.*, 295 S.W.3d 372, 380–81 (Tex. App.—Dallas 2009, pet. denied) (arguing witness was a "Philadelphia lawyer" and appealing to local standards did not rise to level of incurable argument). Further, the fact that Starry failed to provide any basis for his opinion does not make his statements incurable. *See PopCap Games, Inc.*, 350 S.W.3d at 721 (fact that counsel argued evidence that was not in record does not rise to level of incurable argument). Finally, we cannot say, based on the record available

to us, that Starry's statement would have persuaded a juror of ordinary intelligence to reach a verdict contrary to that which he would have reached but for the statement. *See Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009); *Taber*, 316 S.W.3d at 163. We resolve Nguyen's complaint against her.

## *Incurable Jury Argument*

Nguyen also argues that Myers's counsel made an incurable jury argument relating to the existence of liability insurance and Timberlake's lack of credibility. Nguyen specifically complains about the argument that Timberlake was "paid by them," was "their hired gun," was "getting reimbursed for his time," and was "simply paid to be here to tell you that this bulge was not caused by the accident."

Generally, an objection to improper jury argument must be preserved by timely objection and request for an instruction that the jury disregard the improper remark. TEX. R. APP. P. 33.1(a)(1); *see also Phillips*, 288 S.W.3d at 883; *In re S.S.*, No. 12-12-00119-CV, 2012 WL 5991391, at *20 (Tex. App.—Tyler Nov. 30, 2012, no pet. h.). However, a complaint of incurable jury argument may be asserted and preserved in a motion for new trial, even without an objection and ruling during the trial. TEX. R. CIV. P. 324(b)(5); *Phillips*, 288 S.W.3d at 883; *see also PopCap Games, Inc.*, 350 S.W.3d at 719, 721 (reviewing claim that trial court erred by failing to grant motion for new trial based on incurable jury argument).

During Myers's closing argument, Nguyen did not object or request a limiting instruction pertaining to the complained-about arguments. Further, her motion for new trial was based solely on the trial court's denial of the motion for mistrial which, in turn, was based solely on the alleged violation of the motion in limine by Starry's interjection of insurance into the case. *See* TEX. R. CIV. P. 324(b)(5) (point in motion for new trial is a prerequisite to complaint of incurable jury argument

–12–

if not otherwise ruled on by trial court); *Phillips*, 288 S.W.3d at 883; *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 467 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). We conclude Nguyen failed to preserve her incurable jury argument complaint for our review. *See* TEX. R. APP. P. 33.1(a)(1).

We resolve Nguyen's issues against her and affirm the trial court's judgment.

ROBERT M. FILLMORE
JUSTICE

111510F.P05

-13-



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TRACY K. NGUYEN, Appellant

No. 05-11-01510-CV     V.

RODOLFO J. MYERS, Appellee

Appeal from the 14th Judicial District Court of Dallas County, Texas. (Tr.Ct.No. DC-10-09853).
Opinion delivered by Justice Fillmore, Justices FitzGerald and Evans participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellee Rodolfo J. Myers recover his costs of this appeal and the full amount of the trial court's judgment from appellant Tracy K. Nguyen and from Western Surety Company as surety on appellant's supersedeas bond.

Judgment entered February 14, 2013.


ROBERT M. FILLMORE
JUSTICE