SMITH, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority’s reversal of the unjust-enrichment judgment. See supra Part II.B. However, I disagree with majority’s decision to vacate and remand the defamation judgment for a new trial because of references to insurance in trial testimpny and closing argument. See supra Part II.A.
In an eleven-day trial, the subject of insurance arose on the second day following the testimony of Taya Kyle (“Taya”)— Kyle’s widow. Ventura’s counsel asked the court “to address ... the admissibility of the insurance policy that’s applicable here” in light of Taya’s testimony “that she’s had to pay the expenses associated with this litigation”; “that if she gives the money away to charity, that she wouldn’t be able to pay a judgment; and that if she gave the money away, she may not be able to feed her children as a result of this litigation.” Ventura’s counsel argued that courts addressing this issue “have found that this is an instance where an insurance policy should, in fact, be admitted to counteract testimony that is clearly inaccurate.” Ven-tura’s counsel explained that when presented with the “opportunity to do recross on Ms. Kyle, [he] plan[ned] to ask her about whether there is an insurance policy that, in fact, covers the legal expenses and will pay a judgment, because that is the case.” Ventura’s counsel sought “permission to raise the issue of insurance” in light of Taya purportedly opening the door to the subject. The court reserved ruling on the admissibility of insurance pending briefing from the parties.
*889 On the seventh day of trial, the court heard argument outside of the jury’s presence concerning the admissibility of insurance. Ventura’s counsel again argued that Taya should not be permitted to “’plead poverty if an insurance company is going to pick up the tab.’” But Ventura’s counsel conceded that the insurance policy covered only the defamation claim, not the misappropriation and unjust-enrichment claims. In a written order, the district court denied Ventura’s motion to question Taya regarding the insurance policy. The court concluded that “Taya Kyle’s testimony did not open the door to evidence of insurance because her testimony was accurate — the insurance policy covers only the defamation claim, not unjust enrichment or misappropriation, and thus proceeds from American Sniper are at risk, as she testified.”
Undaunted, the next day, Ventura’s counsel acknowledged the court’s ruling but made an offer of proof to preserve the issue for appellate review. Ventura’s counsel proceeded to attempt to introduce, as part of that offer of proof, the insurance policy. “And related to that matter,” Ven-tura’s counsel asked the court’s permission to “inquire [pursuant to Rule 411] as to the existence of insurance” with Rosen-blum and Hubbard, HarperCollins representatives, because of those witnesses’ purported “direct financial interests in this litigation” as representatives of the insured party. The court again reserved ruling on the issue. When the court raised the issue later in the day, Kyle’s counsel reiterated that the witnesses were “not affected by any insurance coverage at all” and that “if HarperCollins or th[ese] witnesses] were direct defendants, the introduction of any evidence regarding insurance would be just as off limits as it is against Mrs. Kyle. It would be completely inappropriate to delve into the question of insurance here.” The court overruled Kyle’s counsel’s objection and permitted the inquiry, although it explained that the inquiry would not “be lengthy or in detail.”
Thereafter, Ventura’s counsel asked Rosenblum whether the witness was “aware that the legal fees for the estate’s attorneys ... are being paid by the insurance company for HarperCollins.” Rosen-blum answered no. Ventura’s counsel then asked whether Rosenblum was “aware that HarperCollins has a direct financial interest in the outcome of this litigation because they are providing the insurance.” Rosenblum again answered no. During a sidebar conference, Kyle’s counsel moved for a mistrial based on the “introduction of the insurance testimony.” The district court denied the motion.
Ventura’s counsel subsequently asked Hubbard, whether “you obtain insurance coverage in the case when an author may get sued for libel or defamation.” Hubbard responded, “I don’t know about that.” Kyle’s counsel objected based on relevance, and the court overruled the objection. Ventura’s counsel then inquired whether the -witness was “aware of any insurance provisions in [Kyle’s publishing] contract.” Kyle’s counsel again objected based on relevance, and the court again overruled the objection. Hubbard answered, “I’m not aware.”
On the final day of trial, during closing arguments, Ventura’s counsel briefly highlighted[11] Rosenblum’s and Hubbard’s ignorance of an insurance provision in Kyle’s publishing contract. Thereafter, the court orally instructed the jury. One of its general instructions was that “[questions, objections, statements, and arguments of lawyers are not evidence in the case.” The “|j]ury retired at 11:59 a.m.” After dis *890 pensing with a couple routine matters, the court asked whether there was anything else that it needed to cover. At that point, Kyle’s counsel moved for a mistrial based on Ventura’s counsel’s references to insurance in his closing argument. The district court denied the motion for mistrial. Court adjourned at 12:02 p.m.
Based on the record, I first conclude that the district court did not err in denying Kyle’s motion for mistrial. Kyle’s motion for mistrial after the retirement of the jury was untimely.
“When reviewing the denial of a motion for a new trial under Fed. R. Civ. P. 59(a), we give great deference to the district court’s ruling and will not reverse in the absence of a clear abuse of discretion.” Brown v. Davis, 813 F.3d 1130, 1138-39 (8th Cir. 2016) (citation omitted). We will reverse the district court’s denial of a motion for new trial “only to prevent a miscarriage of justice.” Behlmann, 794 F.3d at 963 (quotation and citation omitted). Likewise, we “will not disturb a trial court’s denial of a motion for mistrial absent a clear showing of abuse of discretion.” Warger v. Shauers, 721 F.3d 606, 609 (8th Cir. 2013) (quotation and citation omitted). Here, the district court’s denial of the mistrial motion was not an abuse of discretion.
The majority concludes that “[w]e are not convinced Kyle’s counsel’s motion for a mistrial as soon as the jury was excused was untimely.” See supra Part II.A (emphasis added) (citing Lange, 627 F.2d at 127 (citing Thomson, 123 F.2d at 495-96)). Lange provides that “’counsel must either make an objection or ... move for a mistrial at the time of the alleged misconduct, or where it involves a closing argument, counsel ... should[ ] make his objection, take his exception, or ask for remedial action at the close thereof and before the case is submitted to the jury.’ ” 627 F.2d at 127 (emphasis added) (quoting Thomson, 123 F.2d at 495-96 (“[N]o exception to [the closing] remarks was taken by the defendant either during the argument or at its close.”)).
The record shows that Kyle’s counsel failed to make his motion for mistrial “before the case [was] submitted to the jury.” See id. at 127. Here, the record clearly shows that the court gave oral instructions to the jury and that, after that charge, the “D’]ury retired at 11:59 a.m.” Thus, the case was already “submitted to the jury” at 11:59 a.m. before Kyle’s counsel moved for a mistrial based on improper closing argument. For that reason, I conclude that no timely objection was made. See Lange, 627 F.2d at 127.[12]
Second, I do agree with the majority that the district court erred in permitting Ventura’s counsel’s questions to Harper-Collins’s witnesses regarding insurance under Rule 411. The record contains no evidence that “Rosenblum and Hubbard had any economic tie or ’substantial connection’ to HarperCollins’s insurance carrier” and “Ventura never established by direct evidence or reasonable inference that Rosenblum and Hubbard even knew about insurance coverage or possible insurance payment.” See supra Part II.A. But the *891 district court’s error does not automatically render a new trial necessary. “Rule 411 does not deal with the standard for reversal,” which is an abuse of discretion. 23 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5369 (1980) (citing, inter alia, Church Ins. Co. v. Trippe Mfg. Co., 250 Fed.Appx. 420, 422 (2d Cir. 2007) (abuse of discretion); King v. Harrington, 447 F.3d 531, 533 (7th Cir. 2006) (abuse of discretion)). In fact, “some courts have found minor violations of Rule 411 to be ‘harmless error.’ ” Id. (citing Nguyen v. Myers, 442 S.W.3d 434, 440 (Tex. Ct. App. 2013)).
This interpretation is given some support by a former member of the Advisory Committee who has argued that reversals for violations of Rule 411 be limited “to those instances of gross mi[s]conduct in which counsel has made a deliberate and apparently successful attempt to prejudice the jury.” In other words, reversal is required only when the injection of insurance has resulted in an excessive verdict.
Id. (footnotes omitted).
After reviewing the record, I conclude that any error in allowing Ventura’s counsel to inquire about insurance was, at most, harmless and non-prejudicial. First, Ventura’s counsel asked a total of four questions about insurance to two witnesses who disclaimed any knowledge about the subject during the course of an eleven-day trial. Second, the inquiry about insurance came after Taya first testified that she would be responsible for paying the judgment — at least as to the misappropriation and unjust-enrichment claims — were Ventura to prevail. Thus, the jury was on notice that Taya would be responsible for paying at least part of any judgment rendered against Kyle. Third, the issue of insurance did not permeate the entire trial; instead, in addition to the four questions asked of the HarperCollins ■ witnesses, the only other references to insurance were the two statements in Ven-tura’s counsel’s hour-long closing argu-. ment. Fourth, the $500,000 in damages on the defamation claim is not an excessive verdict; as even the majority concedes, the verdict “is probably not beyond the bounds of rationality.” See supra Part II.A. (quotations and citations omitted).
For these reasons, I conclude that the district court did not abuse its discretion in denying Kyle a new trial on the defamation claim.[13]

. The district court permitted each side an hour for closing arguments. Ventura's counsel’s closing argument covers approximately 30 pages of transcript.

. Although Ventura did not object to Kyle's motion for mistrial based on untimeliness, "we may affirm [the district court's denial of the motion for mistrial] for any reason supported by the record, even if different from the reasons given by the district court.” Robbins v. Becker, 794 F.3d 988, 992 (8th Cir. 2015) (quotation and citation omitted); see also Emery v. Am. Airlines, Inc., No. 15-10100, 2016 WL 1425939, at *3 (11th Cir. Apr. 12, 2016) ("Because the district court issued a summary order, it is not apparent from the face of the order that the motion was denied as untimely. We nevertheless may affirm the district court’s decision for any reason supported by the record, even if not relied upon by the district court.” (citation omitted)).

. Because the majority vacates and remands the defamation judgment for new trial based on the references to insurance in trial testimony and closing argument, the majority does not address Kyle’s additional arguments that Kyle is entitled to a new trial on the defamation claim because the district court failed to instruct the jury that Ventura had to prove material falsity by clear and convincing evidence and Ventura failed to establish actual malice. On remand, these issues will likely be raised again. Out of an abundance of caution, I decline to issue an advisory opinion on the merits of these questions.