

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-19-00761-CV

**IN RE COMMITMENT OF** Kevin **JOHNSON**

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CI123245
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: August 19, 2020

AFFIRMED

Appellant Kevin Johnson appeals the trial court's judgment and order of commitment following a jury's finding that Johnson is a sexually violent predator (SVP). Johnson raises five issues on appeal: (1) whether the trial court erred in refusing to exclude a non-testifying expert's report under Rule 705(d) and Texas Health and Safety Code Section 841.061, (2) whether the trial court erred in refusing to exclude details of unadjudicated offenses as more prejudicial than probative under Rule 705(d), (3) whether the trial court erred in allowing Dr. Michael Arambula to testify as an expert regarding Johnson's risk to reoffend, (4) whether evidence is legally sufficient to support a finding that Johnson is an SVP, and (5) whether the evidence is factually sufficient to support a finding that Johnson is an SVP.

We affirm the trial court's judgment.

BACKGROUND

When Johnson was thirty-one years old, he began molesting his cousin's eight-year-old son. Johnson invited his cousin's son to sleep at his house several times a week over a period of approximately two years. He performed oral sex on the child victim at least twenty to thirty times. Johnson made a video recording of the abuse one time, which is the only abuse that Johnson later conceded had occurred. Even so, Johnson insisted that he drank a beer, became drunk, and could not recall the incident. Police found the videotape in Johnson's garbage. Johnson claimed that his cousin's son secretly recorded the incident, and Johnson claims not to have been aroused.

Johnson also invited other boys to stay over, ostensibly to play with his cousin's son. Two child victims were the young sons of coworkers. Another was the young son of a new neighbor. He fondled them while they slept. The neighbor's son awoke to the touching, finding his pants undone and his boxers pulled down. He called his mother to pick him up, and she reported the incident to the police.

Altogether, four child victims made reports against Johnson either for fondling or for performing oral sex on them. Johnson had instructed them not to tell their parents either so that they would not get in trouble or so that they would continue to be allowed to sleep over. He showered with his cousin's son, and he photographed two of the other boys naked.

Johnson later pled guilty to sex offenses involving two of the victims, and the other two victims' cases were dismissed under the plea agreement. Johnson was sentenced to twenty-five years in prison.

While in prison, Johnson was screened for behavioral abnormality because he had two convictions for sexually violent offenses. Three mental health physicians, Dr. Jason Dunham, Dr. Michael Arambula, and Dr. Paul Hamilton, found Johnson had a behavioral abnormality that would make him more likely to commit a violent sexual offense in the future.

Two of the doctors who evaluated Johnson, Dr. Dunham and Dr. Arambula, testified at trial. During the doctors' testimony, they offered their opinions and the bases for them, which included Dr. Hamilton's report. After hearing all the evidence, including Johnson's testimony, the jury unanimously found that Johnson is a sexually violent predator.

Johnson now appeals. We will first address Johnson's three evidentiary issues and then, separately, his two sufficiency of the evidence issues.

### EVIDENTIARY ISSUES

### A. Arguments of the Parties

In Johnson's first, second, and third issues, he challenges the trial court's decision to admit a non-testifying expert's opinion, details of unadjudicated offenses, and a testifying expert's opinion regarding Johnson's risk to reoffend. The State responds that the trial court did not abuse its discretion in admitting the challenged evidence.

### B. Standard of Review

We review the trial court's decision to admit out-of-court expert opinions, facts underlying an expert's opinion, and expert testimony, as with other evidentiary decisions, for an abuse of discretion. *See Nguyen v. Myers*, 442 S.W.3d 434, 440 (Tex. App.—Dallas 2013, no pet.) (citing *U–Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012).

### C. Applicable Law

Texas Rule of Evidence 801 generally excludes out-of-court statements offered for the truth of the matter asserted. TEX. R. EVID. 801; *Fischer v. State*, 252 S.W.3d 375, 378 (Tex. Crim. App. 2008). But experts may testify to facts and data underlying their opinions even if that basis includes hearsay so long as the probative value outweighs the prejudicial effect. TEX. R. EVID. 705(d); *In re Commitment of Winkle*, 434 S.W.3d 300, 315 (Tex. App.—Beaumont 2014, pet.

denied); *In re Commitment of Day*, 342 S.W.3d 193, 197–98 (Tex. App.—Beaumont 2011, pet. denied).

If the court allows evidence under Rule 705(d), then it must also "upon timely request, restrict the evidence to its proper scope and instruct the jury accordingly." *See* TEX. R. EVID. 705; *In re Commitment of Grice,* 558 S.W.3d 323, 327 n.4 (Tex. App.—Houston [14th Dist.] 2018, no pet.). In SVP trials, this includes evidence of unadjudicated offenses if it "assists the jury in understanding an expert's testimony that the person has a behavioral abnormality, which is the ultimate issue that the jury must determine." *In re Commitment of Barrientos*, No. 01-17-00649-CV, 2018 WL 3384563, at \*5 (Tex. App.—Houston [1st Dist.] July 12, 2018, pet. denied) (mem. op.) (citing *In re Commitment of Stuteville*, 463 S.W.3d 543, 556 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)). "Such evidence may also be helpful to the jury in weighing the expert's opinion." *Id*.; *see also In re Commitment of Talley*, 522 S.W.3d 742, 749 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

Regarding expert testimony, it is within the trial court's discretion to allow an expert to testify if the witness is qualified by knowledge, skill, experience, training, or education and is able to offer an opinion in a subject that will help the jury understand the evidence or decide a fact in issue. TEX. R. CIV. EVID. 702; *Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996*)*. On scientific topics, the court must determine whether the witness's testimony is scientifically reliable before allowing the jury to hear it. *Coble v. State*, 330 S.W.3d 253, 272–73 (Tex. Crim. App. 2010) (citing *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 589–92 (1993)).

**D.      Analysis**

*1.      Dr. Hamilton's Out-of-Court Opinion*

a.      <u>Johnson's Arguments</u>

Johnson argues that because Dr. Hamilton's out-of-court expert opinion was not offered for the truth of the matter asserted, its contents were not probative, and experts should not have testified as to the details of Dr. Hamilton's report.  According to Johnson, allowing the testifying experts to discuss the contents of Dr. Hamilton's report caused the prejudicial effect to outweigh any probative value under Rule 705(d).  *See* TEX. R. EVID. 705(d).  Therefore, Johnson maintains, it was reversible error to overrule his hearsay objection and admit testimony regarding Dr. Hamilton's out-of-court opinion.  He also argues Dr. Dunham's and Dr. Arambula's testimony indicated they did not rely on Dr. Hamilton's screening opinion, and allowing testimony about the initial screening was therefore an abuse of discretion under Rule 705(d).  Johnson further contends that if the testifying experts did not rely on Dr. Hamilton's report, then testimony about the report did not fall under Rule 705(d) and was instead improper hearsay that violated his right to cross-examine witnesses against him under section 841.061.  *See* TEX. HEALTH & SAFETY CODE § 841.061.

b.      <u>State's Arguments</u>

The State responds that the trial court did not abuse its discretion by admitting Dr. Hamilton's opinion as foundational evidence by testifying experts.  It further argues Dr. Dunham and Dr. Arambula did use Dr. Hamilton's report in forming their opinions, and that trial testimony satisfied Rule 705(d).  Moreover, if the testimony did not meet the requirements of Rule 705(d), Dr. Hamilton was nevertheless not a testifying witness against Johnson, and testimony about his report did not violate section 841.061.

### c.    Out-of-Court Expert Opinion

Without a non-hearsay purpose, an out-of-court expert's opinion is inadmissible hearsay. *See* TEX. R. EVID. 801; *Fischer*, 252 S.W.3d at 378.  But the rules of evidence allow an out-of-court expert's opinion if it helps to form the basis of a testifying expert's opinion. *See* TEX. R. EVID. 705(d); *Winkle*, 434 S.W.3d at 315.  In an SVP case, an expert's opinion regarding risk assessment is pivotal, and it is important for a jury to be able to consider and scrutinize how the testifying expert arrived at his opinion in order for the jury to arrive at its own conclusion. *See Winkle*, 434 S.W.3d at 315; *Day*, 342 S.W.3d at 199.

### d.    Non-hearsay Purpose

In this case, Dr. Dunham described his methodology for arriving at a risk assessment, which included reviewing Dr. Hamilton's report.  Dr. Dunham also incorporated Dr. Hamilton's experiences with Johnson into his opinion and testimony.  The same was true for Dr. Arambula. For example, Dr. Arambula noted Johnson's inconsistencies from Dr. Hamilton's report as part of his evaluation.  For both experts, Dr. Hamilton's report provided background and context that helped the experts explain their work to the jury. *Cf. Winkle*, 434 S.W.3d at 315 (allowing testifying doctor to testify to doctors' opinions contained in the defendant's record); *Stam v. Mack*, 984 S.W.2d 747, 750 (Tex. App.—Texarkana 1999, no pet.) (allowing testifying doctor to testify to consulting doctor's opinion).  From the testimony, we conclude that Dr. Hamilton's report helped form the basis of the testifying experts' opinions and was not offered for the truth of the matter asserted. *See Winkle*, 434 S.W.3d at 315; *Stam*, 984 S.W.2d at 750.

### e.    Prejudicial Effect

Regarding any prejudicial effect that may have resulted from the basis testimony, this effect was mitigated by the trial court's limiting instruction, which explained the evidence's scope and purpose. *See Winkle*, 434 S.W.3d at 315.  The trial court told the jury at the time of the testimony

and outlined it in the charge that testimony about a non-testifying expert's opinion was meant to show the basis of the testifying experts' opinions and that the jury should not consider it for the truth of the matter asserted. In the absence of evidence to the contrary, we presume the jury followed the court's limiting instructions. *See Stuteville*, 463 S.W.3d at 555; *Day*, 342 S.W.3d at 199.

### f. Cross-examination of Expert

Because we conclude that Dr. Hamilton's work contributed to Dr. Dunham's and Dr. Arambula's evaluations as allowed under Rule 705(d) and was discussed in that context, we do not address Johnson's complaint that testimony regarding Dr. Hamilton's report violated Johnson's statutory right to cross-examine witnesses who testify against him under section 841.061.

We overrule Johnson's first issue.

### 2. *Unadjudicated Offenses*

### a. Parties' Arguments

In his second issue, Johnson argues that Dr. Dunham should not have offered testimony about unadjudicated offenses because the testimony was unnecessary or excessive in establishing Johnson's pedophilia and that the result was unduly prejudicial.

The State argues that Johnson stipulated in criminal court that he committed offenses in the unadjudicated cases, that Dr. Dunham relied on that information, that those offenses raise Johnson's risk of reoffending, that they are used in the SVP test scoring, and that they provide examples of Johnson's sexual deviance and his pedophilia. Furthermore, since Johnson argues on appeal that the evidence against him was insufficient to establish that he is an SVP, excluding evidence as exceeding the threshold of proof should be unwarranted.

### b. Experts' Testimony

During his testimony, Dr. Dunham explained that details of Johnson's unadjudicated offenses contributed to his diagnosis of pedophilia. Although Johnson argues that these details were unnecessary for Dr. Dunham to make his diagnosis, Dr. Dunham's testimony about the underlying facts helped the jury weigh his diagnosis in order to decide whether they agreed that Johnson had a behavioral abnormality that would predispose him to commit sexual offenses. This was the ultimate issue the jury was tasked with deciding, and the information that Dr. Dunham provided was relevant to their decision. *See Talley*, 522 S.W.3d at 748–49; *Stuteville*, 463 S.W.3d at 556 ("The trial court could have reasonably concluded that the facts and details related to Stuteville's offenses would be helpful to the jury in weighing his testimony and Dr. Clayton's testimony, and in explaining the basis for Dr. Clayton's opinion that Stuteville suffers from a behavioral abnormality.").

### c. Dr. Dunham's Testimony

Johnson also argued that Dr. Dunham should not have testified to the details because he had not investigated the allegations. However, it is not Dr. Dunham's role to investigate the allegations, but rather to incorporate information such as victim statements and reports into his evaluation. *See Sosa ex rel. Grant v. Koshy*, 961 S.W.2d 420, 426 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) (allowing accident reconstructionist to testify to unknown witnesses' statements because they helped form the basis of his conclusion). This process was made transparent to the jury, as shown by the transcript excerpts cited by Johnson.

### d. Limiting Instruction

Finally, Johnson argues that Johnson pled guilty to two offenses and that providing information beyond his convictions could have encouraged the jury to punish Johnson for the unadjudicated offenses. However, the jury was charged with deciding whether Johnson posed a

risk as a sex offender and whether he should be civilly committed. As stated, we presume the jury followed the court's limiting instructions in the absence of evidence to the contrary. *See Stuteville*, 463 S.W.3d at 555; *Day*, 342 S.W.3d at 199. Given the purpose for admitting the evidence under Rule 705, the trial court did not abuse its discretion by concluding that the evidence was admissible and would not be unfairly prejudicial. *See Barrientos*, 2018 WL 3384563, at *6 (citing *Winkle*, 434 S.W.3d at 309).

We overrule Johnson's second issue.

### 3. *Dr. Arambula's Testimony*

#### a. Parties' Arguments

In his third issue, Johnson argues that Dr. Arambula's testimony regarding Johnson's likelihood to reoffend did not meet the requirements of Rule 702 and *Daubert*, because he did not use statistical data, and his methodology was outdated. *See* TEX. R. EVID. 702; *Daubert*, 509 U.S. 579. Therefore, Johnson argues that the trial court abused its discretion by allowing Dr. Arambula to testify as to Johnson's risk to reoffend.

The State argues that Dr. Arambula is board certified in forensic psychiatry, that his methods are reliable, and that the trial court did not abuse its discretion in allowing Dr. Arambula to testify regarding Johnson's likelihood to reoffend. The State also points out that Dr. Arambula was considered qualified to testify in *In re Commitment of Day*, in addition to other SVP cases, because his "testimony present[ed] a reasoned judgment based upon established research and techniques for his profession," and that the same should be considered true in Johnson's case. *Day*, 342 S.W.3d at 204. Furthermore, the State argues that Dr. Arambula's opinion is based in forensic psychiatry, which should be evaluated under *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999), rather than under *Daubert* standards.

b.      Applicable Standard

We agree that *Nenno* applies.  *See Coble*, 330 S.W.3d at 274 (quoting *Nenno*, 970 S.W.2d at 561).  In *Nenno*, the court upheld the admission of testimony by a special agent in the Behavioral Sciences unit of the FBI concerning future dangerousness in a capital murder trial.  *Nenno*, 970 S.W.2d at 561.  *But cf. Coble*, 330 S.W.3d at 274 n.49 (characterizing the special agent in *Nenno* as "a layman whose analysis was based on his experience studying sexual victimization of children" in contrast with its evaluation of a forensic psychiatrist's testimony).  Generally, regarding a defendant's likelihood to reoffend, a mental health specialist may render an opinion based on his specialized education and experience.  *Griffith v. State*, 983 S.W.2d 282, 288 (Tex. Crim. App. 1998) (citing *Clark v. State*, 881 S.W.2d 682, 698 (Tex. Crim. App. 1994); *McBride v. State*, 862 S.W.2d 600, 608 (Tex. Crim. App. 1993)); *see also Coble*, 330 S.W.3d at 299 (Keller, P.J., concurring) (noting that the reliability standard for forensic psychiatry is a flexible one).  Here, however, Johnson has challenged whether Dr. Arambula's testimony properly relies on scientific principles used in his field.  As stated in *Coble*, the "validity of the expert's conclusions depends upon the soundness of the methodology."  *Coble*, 330 S.W.3d at 276–77.

c.      Reliability of Testimony

Dr. Arambula is an expert in forensic psychiatry, a legitimate, recognized field of study,[1] and he has significant education and experience in his field.  He testified that he reviewed Johnson's record and interviewed Johnson for two and a half hours before rendering an opinion in this case, consistent with his regularly accepted practice.  *See Day*, 342 S.W.3d at 199 (finding Dr. Arambula's method and explanation helpful to the jury); *In re Commitment of Letkiewicz*, No. 01-13-00919-CV, 2014 WL 2809819, at *7 (Tex. App.—Houston [1st Dist.] June 19, 2014, pet.

---

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 46B.022 (codifying qualifications to be appointed as a forensic psychiatrist); *Coble*, 330 S.W.3d at 300 (noting that "forensic psychiatry is a legitimate field").

dism'd) (mem. op.) (approving Dr. Arambula's method and testimony). Dr. Arambula testified that he weighed Johnson's convictions heavily and the other two allegations against Johnson to a lesser degree in determining Johnson's risk to reoffend. *See In re Commitment of S.D.*, No. 10-17-00129-CV, 2020 WL 103721, at *5 (Tex. App.—Waco Jan. 8, 2020, no pet.) (mem. op.); *In re Commitment of Farro*, No. 01-18-00164-CV, 2018 WL 6696567, at *6 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, pet. denied) (mem. op.). He stated that research shows having two or more convictions or offenses significantly increases a defendant's risk to reoffend two or threefold. *See Day*, 342 S.W.3d at 203 (citing Dr. Dunham that "an offender's risk increases exponentially with additional offenses"); *In re Commitment of Mullens*, 92 S.W.3d 881, 886 (Tex. App.—Beaumont 2002, pet. denied) (citing Dr. Rahn Bailey's opinion that "with each successive offense the risk of reoffense grows"). He also testified that evidence of perpetrating against male victims is also shown to increase a defendant's risk to reoffend, which Dr. Dunham testified to as well. *See In re Commitment of Lopez*, 462 S.W.3d 106, 116 (Tex. App.—Beaumont 2015, pet. denied); *In re Commitment of Stonecipher*, No. 14-18-00143-CV, 2019 WL 1119780, at *3 (Tex. App.—Houston [14th Dist.] Mar. 12, 2019, no pet.) (mem. op.).

Dr. Arambula's testimony showed reliance on research in his field and consistency with his colleagues' work and conclusions. *See In re Commitment of Bohannan*, 388 S.W.3d 296, 301 (Tex. 2012); *Day*, 342 S.W.3d at 203. When explaining his opinion, Dr. Arambula applied techniques consistent with his training, such as relying on the criteria of the Diagnostic and Statistical Manual of Mental Disorders to diagnose Johnson with pedophilia and unspecified personality pathology disorder. *See Bohannan*, 388 S.W.3d at 301; *Day*, 342 S.W.3d at 203.

The jury was asked to determine whether Johnson had a behavioral abnormality that would make him likely to reoffend. In his testimony, Dr. Arambula demonstrated specialized education and experience in this area as well as the application of methods derived from training and research

in his field. *See Bohannan*, 388 S.W.3d at 301; *Day*, 342 S.W.3d at 203. We cannot say that the trial court abused its discretion in allowing Dr. Arambula to testify to his opinion on the issue of whether Johnson was likely to reoffend. *See Day*, 342 S.W.3d at 217; *In re Commitment of Bunn*, No. 09-12-00349-CV, 2013 WL 5874460, at *3 (Tex. App.—Beaumont Oct. 31, 2013, no pet.) (mem. op.); *In re Commitment of Martinez*, No. 09-13-00034-CV, 2013 WL 3488143, at *2 (Tex. App.—Beaumont July 11, 2013, pet. denied) (mem. op.).

We overrule Johnson's third issue.

SUFFICIENCY OF THE EVIDENCE

**A.      Arguments of the Parties**

In his fourth and fifth issues, Johnson argues that the evidence is legally and factually insufficient to support the jury's finding that Johnson is an SVP.

The State responds that the jury heard all the evidence, weighed its credibility, and delivered a verdict that was supported by the evidence. Because we ultimately conclude that the evidence meets both standards, we combine our analysis below.

**B.      Standards of Review**

The State must prove beyond a reasonable doubt that a defendant is an SVP. TEX. HEALTH & SAFETY CODE ANN. § 841.062(a); *In re Commitment of Williams*, 539 S.W.3d 429, 437 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Accordingly, the legal sufficiency standard of review in SVP cases is the same as in criminal cases. *Williams*, 539 S.W.3d at 437; *Stuteville*, 463 S.W.3d at 551. "We review the evidence in the light most favorable to the verdict to determine whether any rational fact finder could find, beyond a reasonable doubt, the elements required for commitment under the SVP Act." *Williams*, 539 S.W.3d at 437 (citing *Stuteville*, 463 S.W.3d at 551). The jury remains the sole judge of credibility and weight regarding witness testimony. *Id*.

Under a factual sufficiency review, we weigh the evidence to determine whether the verdict reflects a risk of injustice that would require a new trial. *See id.*; *Day*, 342 S.W.3d at 213. This analysis requires viewing the evidence in a neutral light, rather than a deferential one, to determine whether a jury was rationally justified in reaching its verdict. *Williams*, 539 S.W.3d at 437 (citing *Stuteville*, 463 S.W.3d at 552).

**C.      Analysis**

We begin our analysis with a review of the evidence to determine if it is legally and factually sufficient to support the jury's finding that Johnson is an SVP. A person is an SVP if he is a repeat sexually violent offender and suffers from a behavioral abnormality that causes serious lack of behavioral control and makes him likely to engage in predatory acts of sexual violence. TEX. HEALTH & SAFETY CODE ANN. § 841.003(a); *Stuteville*, 463 S.W.3d at 552.

*1.      Johnson's Testimony*

At trial, Johnson admitted that about seven or eight different boys under the age of thirteen had stayed the night at his house between 1997 and 1999, but he denied any inappropriate or illegal behavior with them. The State confronted Johnson with a previous statement in which Johnson told law enforcement that he pulled covers up over one of the boys and probably touched the boy's penis at that time. Although the source of the statement was from a signed document entitled Voluntary Statement of Kevin Johnson, Johnson responded that he did not recall telling law enforcement that he touched a boy's penis while pulling covers over him and that he could not recall signing a document to that effect. He also denied that the initials on the statement looked like his. However, on the following day of testimony, Johnson clarified that he was at least eighty percent certain that he had offended against the boy.

Furthermore, Johnson denied having a camcorder even though evidence in his case included a home recording of Johnson performing oral sex on his cousin's son. Once the topic of

the video was broached, Johnson clarified that he had borrowed a camcorder, but still denied having taken the video, claiming he could not recall the incident and had not seen the video. Johnson explained that he kept a couple of beers in his refrigerator for when his stepfather would come over, that he drank one or two of the beers, became drunk, and did not remember molesting his cousin's son.

### 2. Dr. Dunham's Opinions

Dr. Dunham testified at trial for the State. Dr. Dunham, a forensic psychologist licensed in Texas since 2006 and with extensive experience in evaluating sex offenders, evaluated Johnson. Dr. Dunham submitted Johnson to two tests to measure psychopathy and likelihood to recidivate. He also interviewed Johnson, and he reviewed Johnson's criminal record as well as other documents related to Johnson's case, such as Dr. Hamilton's evaluation of Johnson.

Dr. Dunham testified that he was looking for patterns of behavior that showed Johnson committed sexual offenses against minors that would suggest Johnson's propensity to commit sexual offenses against minors in the future. By reviewing Johnson's case, he learned the details of two convictions and two unadjudicated allegations that suggested a pattern and a likelihood to recidivate.

Dr. Dunham also noted that Johnson would only admit to offenses that he could not deny, such as the videotaped molestation that police found in Johnson's garbage. Dr. Dunham pointed out that Johnson's inability to admit to the allegations against him revealed a lack of empathy and remorse and made it more likely that he would reoffend in the future.

Dr. Dunham testified that the son of Johnson's neighbor was a stranger to him, and Johnson's willingness to molest the new neighbor also suggested a greater likelihood to reoffend in the future.

Ultimately, Dr. Dunham agreed with Dr. Hamilton's opinion that Johnson has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence in the future.

### 3. Dr. Arambula's Testimony

Dr. Arambula also testified that he believed Johnson has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Like Dr. Dunham, he looked at the number of victims, the ages of victims, and other risk factors in drawing his conclusion. He also testified that Johnson's denial made it likely that his pedophiliac impulses would worsen. Dr. Arambula opined that there was a possibility that Johnson could lower his likelihood to reoffend by succeeding in treatment, but he had not achieved that potential at the time of his testimony and would not be able to if he continued to deny his behavior.

### C.    Sufficient Evidence

Based on the admissible trial testimony from Johnson, Dr. Dunham and Dr. Arambula, we conclude the evidence is legally and factually sufficient to support the jury's finding that Johnson is an SVP. *See Williams*, 539 S.W.3d at 437; *Day*, 342 S.W.3d at 200–17. The testimony from these witnesses shows that the State demonstrated beyond a reasonable doubt that Johnson has a behavioral abnormality that makes him likely to commit a sexual offense in the future, and that there was no risk of injustice from the verdict that would require a new trial. *See Williams*, 539 S.W.3d at 437; *Day*, 342 S.W.3d at 200–17.

CONCLUSION

Having reviewed the entire record, we conclude the evidence is sufficient to support the jury's SVP finding. The record does not reflect that the trial court abused its discretion regarding the admission into evidence of Dr. Arambula's risk assessment testimony. The trial court also did not abuse its discretion by allowing testifying expert witnesses to refer to Dr. Hamilton's opinion as part of the basis for their opinions, particularly because the trial court included Johnson's

requested limiting instruction. Similarly, the trial court did not err in allowing Dr. Dunham to describe details of the unadjudicated offenses because those facts also helped form the basis of his opinion, and they were not unduly prejudicial. Therefore, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice